IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| VANESSA LANDGRAVE, | § § | |
| Plaintiff, | § § | |
| v. | § § | 1-20-CV-968-RP |
| FORTEC MEDICAL, INC., | § § | |
| Defendant. | § § | |

**ORDER**

Before the Court are Plaintiff Vanessa Landgrave's ("Landgrave") Motion for Partial Summary Judgment, (Dkt. 15), and Defendant ForTec Medical, Inc.'s ("ForTec") Motion to Dismiss for Lack of Subject Matter Jurisdiction or, Alternatively, Motion for Summary Judgment, (Dkt. 16). Having considered the parties' submissions, the record, and the applicable law, the Court will grant Landgrave's motion for summary judgment and deny ForTec's motion to dismiss or for summary judgment.

**I. BACKGROUND**

This is an action under the Family & Medical Leave Act ("FMLA" or the "Act"), 29 U.S.C. § 2601, et seq., for ForTec's failure to grant leave to Landgrave, as allegedly required by the FMLA, and Landgrave's subsequent departure from the company. ForTec owns and rents medical equipment and provides technicians to medical facilities to assist surgical staff in operating the equipment. (Cooper Dep., Dkt. 16-2, at 8-9; Pearson Dep., Dkt. 15-4, at. 14). Landgrave worked as a surgical laser technician for ForTec. (Pearson Dep., Dkt. 15-4, at 20). She was initially employed by On Call Surgical from 2015 until 2018, when ForTec acquired the company and hired her. The hiring process took place through the human resources department at ForTec's corporate headquarters in Hudson, Ohio. (Jones Dep., Dkt. 15-3, at 15; Def.'s Interrog. Answers, Dkt. 15-1, at

1

4). More than fifty employees work at the Hudson office. (Cooper Dep., Dkt. 15-2, at 22–23; Pearson Dep., Dkt. 15-4, at 14; Def.'s Interrog. Answers, Dkt.15-1, at 4.). Like all surgical laser technicians, Landgrave was a remote employee, without a fixed worksite. (Pearson Dep., Dkt. 15-4, at.15, 20–21; Jones Dep., Dkt. 15-3, at 52). She lived in Hewitt, Texas while employed by ForTec. (Compl., Dkt. 1, at 1). Her "Org Level" was "South Central" and her "Ops Location" was Austin. (Cooper Dep., Dkt. 16-2, at 12; Jones Decl., Dkt. 16-6, at 1, 3). Landgrave never went to the Hudson headquarters. (Landgrave Dep., Dkt. 16-1, at 54). ForTec claims her contact with Hudson was limited to administrative, human resources, information technology, and billing issues. (Cooper Decl., Dkt. 16-5, at 1). It further claims that she had more contact with the sales representatives, other technicians, and the manager in her region. (*Id.*; Landgrave Dep., Dkt. 16-1, at 45–47). Most of Landgrave's cases were located in Texas, but occasionally she traveled to other states. (Cooper Decl., Dkt. 16-5, at 1).

ForTec's "customer care (scheduling) team" in Hudson receives orders for service from hospitals and clinics for its surgical equipment that are processed through its software application, ForSite, and sent out to the relevant territories. (Cooper Dep., Dkt. 16-2, at 23–24, 26–27). The order for service requests contain information including the procedure's date, time, name, and location, the patient and physician name, the customer's name and notes, the physician's case notes, and the pricing. (Jones Dep., Dkt. 15-3, at 52). Hudson employees confirm the case information the day before the case, and update and confirm the order form. (Revenue Recognition Examples, Dkt. 18-9, at 1; Cooper Dep., Dkt. 16-2, at 28:15-19). Employees in each region then pass the orders on to technicians like Landgrave. (Cooper Dep., Dkt. 16-2, at 27). The technicians take surgical equipment from storage facilities in their region to the medical facilities where they are needed and assist the medical providers during surgery. (Pearson Dep., Dkt. 15-4, at 20; Cooper Decl., Dkt. 16-5, at 1). In Texas, storage facilities are located in Dallas, Waco, and Round Rock. (Landgrave Dep.,

Dkt. 16-1, at 48–49). After a procedure is complete, the technician prepares a report including case details, items used, and final disposition, and sends their report to the Hudson office. (Cooper Dep., Dkt. 16-2, at 29–32; Revenue Recognition Examples, Dkt. 18-9, at 2). If there is a problem with a report, such as missing or duplicate information, or a technician marks a case for review, the Sales Support team in Hudson reviews the case, makes corrections if necessary, verifies the report, and sends it to accounting. (Cooper Dep., Dkt. 16-2, at 30–31; Revenue Recognition Examples, Dkt. 18-9, at 2). Hudson employees can also reopen the case and ask the technician to make the corrections.

Landgrave's direct supervisor was Regional Logistics Manager Alvin Cooper ("Cooper"), also a remote employee, who worked out of his home in Paige, Texas. (Cooper Dep., Dkt. 16-2, at 6–7, 17). His direct supervisor was David Yuknis ("Yuknis"), a remote employee who worked from his residence outside of Chicago. (Cooper Dep., Dkt. 16-2, at 12). Yuknis reported to Joe Zak, who worked in Hudson. (*Id.* at 12–13). In 2019, when the events in question transpired, ForTec had approximately four hundred employees across the country, with 65 working at the Hudson office. (Jones Dep., Dkt. 15-3, at 52). At that time, ForTec employed twenty people in Texas, all as remote employees; it had fewer than fifty employees in the state for all of 2018 and 2019. (*Id.* at 40). Sixteen of those employees were directly supervised by Cooper. (Cooper Decl., Dkt. 16-5, at 1).

Cooper managed the "South Central" region, including Dallas, Houston, San Antonio, and Austin, as well as cities outside of Texas including Jackson, Mississippi and Pensacola, Florida. (Cooper Dep., Dkt. 16-2, at 14). He oversaw logistics for cases in that region. (Landgrave Dep., Dkt. 16-1, at 59; Cooper Dep. Dkt. 16-2, at 13–14). Although the parties dispute the level of his authority and control over assignments, it is undisputed that he paired technicians with assignments passed through ForSite from Hudson. (Cooper Dep., Dkt. 16-2, at 26–27). He also spoke, text messaged, and emailed with technicians about their cases. (Landgrave Dep., Dkt. 16-1, at 43, 56–57). Cooper was the only person ever listed as Landgrave's supervisor. (Jones Decl.., Dkt. 16-6, at 1). According

to ForTec, he monitored her performance and was authorized to discipline her. (Cooper Decl., Dkt. 16-5, at 1). She informed him of her availability and made her requests for time off to him. (Landgrave Dep., Dkt. 16-1, at 55, 59).

In 2019, Landgrave's mother, who lives in Mexico, required cervical spine surgery. Landgrave requested leave under the FMLA to care for her mother following the surgery. (Cooper Dep., Dkt. 16-2, at 33–35, 37). According to ForTec, in Spring 2019, Landgrave informed Cooper about the surgery, which had not been scheduled at that time. (*Id.* at 34; Landgrave Dep., Dkt. 16-1, at 61). Then, on July 8, 2019, Landgrave emailed Cooper to tell him the surgery was scheduled for July 23 in Mexico City. (Cooper Dep., Dkt. 16-2, at 35–36). According to ForTec, Cooper called her to tell her that she did not have any paid time off available. (*Id.*). When Landgrave informed Cooper she would take leave under the FMLA, he told her to speak with human resources because he was unfamiliar with the FMLA process. (*Id.*). Landgrave purchased tickets to Mexico and obtained passports for her children. (Cooper Dep., Dkt. 16-2, at 52–53). According to Landgrave, ForTec failed to notify her that her request was denied until just before her flight. ForTec states that its human resources manager learned Landgrave was seeking FMLA leave, for which she believed Landgrave was ineligible, during the week of July 17. (Pearson Dep., Dkt. 15-4, at 31–33, 35–36). On July 18, Cooper told Landgrave via text message that she was ineligible for FMLA leave, stating that "there has to be a certain amount (sic) of employees working within 75 miles. None of us qualify down here." (Cooper Dep., Dkt. 16-2, at 43, 48; Text Messages, Dkt. 15-5, at 2).

Landgrave's employment with ForTec ended while she was in Mexico caring for her mother; Landgrave claims that human resources manager Nancy Pearson ("Pearson") and human resources director Laure Jones ("Jones"), both in Hudson, together decided to terminate her while she was in Mexico. (Pearson Dep., Dkt. 15-4, at 87–94). According to ForTec, Landgrave left a voicemail for Pearson on July 17, and when she attempted to call back, Pearson was unable to reach Landgrave on

her personal or work phones. (Pearson Dep., Dkt. 15-4, at 50–51). Pearson then emailed Landgrave a letter stating that if she did not return to work on July 22, ForTec would understand her to be voluntarily resigning her position. (*Id.* at 54–55). Cooper emailed Landgrave on July 24 and 25 about her plans, and told her that if she did not respond by July 26, ForTec would consider her to have voluntarily resigned. (Cooper Dep., Dkt. 16-2, at 58, 60). On July 30, Landgrave responded to Cooper by email, and failed to provide a date for her return to work. (*Id.* at B-11). ForTec interpreted her absence as a voluntary resignation. (Pearson Dep., Dkt. 15-4, at 63). After Landgrave's employment ended, ForTec instructed her to return her equipment to the Hudson office. (Termination Letter, Dkt. 11, at 1).

Landgrave asserts that ForTec failed to investigate the FMLA's applicability to remote workers before terminating her employment. (Pl.'s Mot., Dkt. 15, at 3; Pearson Dep., Dkt. 15-4, at 10, 36–39, 82–83; Jones Dep., Dkt. 15-3, at 36–37, 39–41). She states that Pearson failed to research or review the law or seek legal counsel, and had no knowledge of the Act's treatment of remote workers. (Pearson Dep., Dkt. 15-4, at 10; 36–39; 82–83). Landgrave alleges that Pearson's sole action was to review ForTec's employee handbook, which does not mention remote workers. (*Id.* at 38; FMLA Policy, Dkt. 15-6 at 2). Landgrave further claims that Jones was unaware of and did not review the FMLA regulations dealing with remote workers, did not know of anyone at the company who sought legal advice on the matter, and did not seek to determine Landgrave's reporting site. (Jones Dep., Dkt. 15-3, at 36–37, 39–41). ForTec notes that Jones knows that the FMLA and ForTec policy prohibit interference with an employee's FMLA rights or retaliation against them for exercising those rights. (*Id.* at 41, 44).

The dispute in this case concerns coverage by the FMLA. Under the FMLA, employees may take up to twelve weeks per year of leave to care for any of the family members listed in the Act, including a parent, if the "parent has a serious health condition." 29 U.S.C. § 2612(a)(1). The FMLA

guarantees such leave and employment protections to "eligible employees." *Id.* Specifically, an employee is entitled "to be restored by the employer to the[ir] position of employment" or "to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment" after taking leave. *Id.* at § 2614(a)(1). The Act makes it "unlawful for an employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the Act or "to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful." *Id.* at § 2615(a). An otherwise eligible employees is ineligible for FMLA protections if "employed at a worksite at which [the] employer employs less than 50 employees if the total number of employees employed by that employer within 75 miles of that workers is less than 50." *Id.* at § 2611(2)(B)(ii).

Landgrave asserts causes of action under the FMLA for interference and retaliation. She asserts that ForTec is an eligible employer, and she is an "eligible employee" under the Act. She was employed for at least twelve months and 1,250 hours during the previous twelve months, entitling her—if eligible—to twelve weeks of leave, and to reinstatement following that leave. (Compl., Dkt. 1, at 4); 29 U.S.C. § 2611(2)(A). Landgrave claims that although she worked remotely, the Hudson, Ohio corporate office was her worksite and, because that office has more than fifty employees, her remote work did not render her ineligible under the FMLA. (Compl., Dkt. 1, at 4); 29 U.S.C. § 2611(2)(B). She claims ForTec intentionally interfered with or denied the rights guaranteed to her under the FMLA by failing to provide her with proper notices, by discharging her during her leave, and by retaliating against her for exercising her FMLA rights. (Compl., Dkt. 1, at 5). ForTec asserts that Landgrave lacks subject matter jurisdiction over the suit, and that its actions were in good faith, precluding an award of liquidated damages. (Answer, Dkt. 2, at 4). ForTec seeks to dismiss Landgrave's claims for lack of jurisdiction, and seeks summary judgment on all claims, asserting that Landgrave was not based in Hudson, and so was ineligible under the FMLA. (Def.'s Mot., Dkt. 16.)

Landgrave seeks summary judgment only as to ForTec's good faith affirmative defense. (Pl.'s Mot., Dkt. 15).

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject-matter jurisdiction as a defense to suit. Fed. R. Civ. P. 12(b)(1). Federal district courts are courts of limited jurisdiction and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id*. In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotations and footnote omitted). When reviewing a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences

are to be drawn in his favor." *Anderson*, 477 U.S. at 255. Further, a court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Furthermore, the nonmovant is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* After the nonmovant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted. *Miss. River Basin All. v. Westphal,* 230 F.3d 170, 175 (5th Cir. 2000). Cross-motions for summary judgment "must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 538–39 (5th Cir. 2004).

### III. DISCUSSION

There are two motions before the Court. First is ForTec's Motion to Dismiss for Lack of Subject Matter Jurisdiction, or, Alternatively, Motion for Summary Judgment. (Dkt. 16). As explained below, the Court finds that the motion to dismiss must be denied, as the issue of FMLA eligibility is an essential element of the claim rather than a jurisdictional question. Further, summary

judgment must be denied as ForTec is not entitled to judgment as a matter of law. There exist genuine disputes of material fact regarding Landgrave's worksite, and therefore her FMLA eligibility, which are properly resolved by a jury at trial. Second is Landgrave's Motion for Partial Summary Judgment on ForTec's good faith affirmative defense. (Dkt. 15). For the reasons discussed below, the Court finds no genuine dispute of material fact on this issue, and that Landgrave is entitled to summary judgment as a matter of law.

### A. ForTec's Motion

ForTec claims that Landgrave was not an "eligible employee" under the FMLA because (1) she was a remote employee with no fixed worksite, (2) she reported to and received assignments from her supervisor in Paige, Texas, and (3) ForTec employed fewer than fifty people within a seventy-five mile radius of that worksite. (Def.'s Mot., Dkt. 16, at 1). ForTec argues that because Landgrave does not meet the FMLA's definition of an "eligible employee," Landgrave cannot state a claim under the Act. (*Id.*).

### 1. Motion to Dismiss

ForTec claims that because Landgrave is not an "eligible employee" under the FMLA, the Court lacks subject matter jurisdiction over her claims. However, as Landgrave notes, the Fifth Circuit has conclusively held that "the employee-numerosity requirement [of the FMLA] is an element of the claim, not a limit upon the federal-court's subject-matter jurisdiction." *Minard v. ITC Deltacom Commc'ns, Inc.*, 447 F.3d 352, 353 (5th Cir. 2006); *see Heinsohn v. Carabin & Shaw*, P.C., 832 F.3d 224, 231 (5th Cir. 2016) ("Although the FMLA only applies to employers with a specified minimum number of employees or more, that requirement 'is an element of the claim, not a limit upon the federal court's subject-matter jurisdiction.'" (quoting *Id.*)); (Pl.'s Resp., Dkt. 18, at 9). Applying the Supreme Court's reasoning regarding an analogous eligibility provision of Title VII of the Civil Rights Act of 1964, which states that "when Congress does not rank a statutory limitation

9

on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character[,]" *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006), the Fifth Circuit found no indication that Congress intended the FMLA's numerosity provision to be jurisdictional. *Minard*, 447 F.3d at 356. Indeed, the "50-employee threshold appears in the definitions section, separate from the jurisdictional section, and does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts." *Id.*. In *Minard*, the Court reversed an erroneous grant of summary judgment based on lack of subject matter jurisdiction. *Id.* at 357–58. There does not appear to be any basis on which to distinguish that case from the matter at hand, nor does ForTec suggest any such reason. Therefore, Landgrave has no obligation to establish the numerosity element to prove jurisdiction. Under Fifth Circuit law, ForTec's motion to dismiss for lack of subject matter jurisdiction must be denied.

## 2. Motion for Summary Judgment

ForTec also seeks summary judgment based on its contention that Landgrave does not qualify as an "eligible employee" under the FMLA. The FMLA excludes from its eligibility definition "any employee of an employer who is employed at a work site where such employer employs less than 50 employees if the total number of employees employed by the employer within 75 miles of that work site is less than 50." 29 U.S.C. § 2611(2)(B)(ii) (1999). Although the FMLA itself does not address remote workers, the Department of Labor's ("DOL") implementing regulations state, "[f]or employees with no fixed worksite, . . . the worksite is the site to which they are assigned as their home base, from which their work is assigned, or to which they report." 29 C.F.R. § 825.111(a)(2). Further, "[a]n employee's personal residence is not a worksite in the case of employees . . . who travel a sales territory and who generally leave to work and return from work to their personal residence, or employees who work at home, as under the concept of flexiplace or telecommuting." *Id.* Landgrave claims that her worksite is ForTec's Hudson, Ohio corporate office, where it is undisputed that more than fifty employees work. (*See* Def.'s Mot., Dkt. 16, at 7; Jones Dep., Dkt. 15-

3, at 52). ForTec claims that her worksite is Cooper's residence in Paige, Texas, where it is undisputed that fewer than fifty employees work within a 75-mile radius. (Cooper Dep., Dkt. 16-2, at 6 –7, 17). Thus, to prevail on summary judgment, ForTec must prove that the Hudson location does not qualify as Landgrave's worksite, making her ineligible for protection under the FMLA.

Although the Fifth Circuit has not spoken on the matter,[1] the Senate indicated in passing the FMLA that "[t]he term 'worksite' is intended to be construed in the same manner as the term 'single site of employment' under the Worker Adjustment and Retraining Notification Act ("WARN"), 29 U.S.C. 2101(a)(3)(B), and regulations under that Act (20 CFR Part 639)." Sen. Rep. No. 103-3, at 23 (1993). For remote workers, that is "the single site of employment to which they are assigned as their home base, from which their work is assigned, or to which they report." *Id.* To defeat Landgrave's claims, and prevail on summary judgment, ForTec must establish that the Hudson location that she claims as her worksite does not qualify as such—that it was neither (1) her home base, nor (2) the site that assigned her work, nor (3) the site to which she reported. If Landgrave can establish a genuine issue of fact as to any one of these definitions, then ForTec's motion for summary judgment must fail.

The Court finds there are no facts sufficient to sustain an assertion that the Hudson location was Landgrave's "home base," nor does she argue as much. Analogizing to the WARN Act, as construed by the Third Circuit, a remote employee's "home base" "must at a minimum be a location at which the employee is physically present at some point during a typical business trip" and "refers not to the physical base of the employer's operations . . . but rather to the physical base of the employee." *Ciarlante v. Brown & Williamson Tobacco Corp.*, 143 F.3d 139, 146 (3d Cir. 1998). Landgrave

---

[1] Both parties cite *Hill v. Rsch. Inst. of Am. Grp.*, 209 F.3d 719 (5th Cir. 2000), in which the Fifth Circuit upheld dismissal of an FMLA case in an unpublished opinion by the Northern District of Texas. The Court finds that the Northern District's reasoning, and the facts present there, do not conclusively support either side in this case and, regardless, the opinion is not binding authority here.

does not dispute that she was never physically present at the Hudson location. (Landgrave Dep., Dkt. 16-1, at 54). Indeed, her human resources paperwork list her "Ops Location" as Austin. (Jones Decl., Dkt. 16-6, at 1, 3). The Hudson location was not Landgrave's home base; she cannot establish FMLA eligibility on this basis.

The other two routes to defining a worksite for the purposes of eligibility, however, are far less clear. For each of these bases—the assigning site and the reporting site—there is at least a genuine issue of material fact sufficient to warrant a determination by a jury and a denial of summary judgment. The assigning site is the "source of the day-to-day instructions" given to the employee; it is not determined by the location of "centralized payroll and certain other centralized managerial or personnel functions." *Ciarlante*, 143 F.3d at 147. Courts must "distinguish the true source of the instructions from mere conduits through which the instructions passed[,]" *id.*, and focus on "where the people were who were ultimately responsible for creating and receiving the information[,]" *id.* at 150.

Here, ForTec argues that Cooper assigned Landgrave her work from his home in Texas. (Def.'s Mot., Dkt. 16, at 9–10). There is no dispute that customers contact ForTec through a centralized system which then creates assignments. Instructions originate in Hudson and are sent to remote employees through the ForSite application. (Cooper Dep., Dkt. 16-2, at 23, 27; Workflow Chart, Dkt. 18-8, at 1; Revenue Recognition Examples, Dkt. 18-9, at 1). It is similarly undisputed that Cooper ultimately directs cases to the specific employees in his region. (Cooper Dep., Dkt. 16-2, at 27–28, 33; Def.'s Mot, Dkt. 16, at 9; Pl.'s Resp., Dkt. 18, at 12). Where the parties diverge is whether Cooper's involvement is sufficient to transform his home into Landgrave's worksite.

ForTec claims that Cooper "is still . . . giving the assignments, not the computer application." (Def.'s Mot., Dkt. 16, at 9). As it describes the process, "[a]fter consideration of their technicians' availability and the needs of the cases, the manager inputs into ForSite the assignments

to the technicians, and the technicians receive an email through ForSite with the case details." (*Id.*). It claims that Cooper made all assignments to Landgrave, and that he was her point of contact for daily logistics. (Cooper Decl., Dkt. 16-5, at 1). She admits that she communicated with him regularly "regarding things with our daily work." (Landgrave Dep., Dkt. 16-1, at 28, 43–44). ForTec further notes that Cooper was responsible for resolving "equipment and facility issues," vehicle logistics, and administrative matters. (Def.'s Mot., Dkt. 16, at 9–10; Cooper Decl., Dkt. 16-5, at 1, 3, 12). He also assisted with processing time off requests and with transporting equipment. (Def.'s Mot., Dkt. 16, at 10; Landgrave Dep., Dkt. 16-1, at 55, 59–61).

Landgrave counters that Cooper simply "clicks the mouse on his computer at his house and sends these instructions from Hudson to one technician or the other in his region. (Pl.'s Resp., Dkt. 18, at 12). By contrast, "'[v]ital information moves from Hudson to Landgrave such as the procedure's date and time, type, equipment required, location, payor, physician, patient, and notes from the customer and physician." (*Id.*; Revenue Recognition Examples, Dkt. 18-9, at 1). According to Landgrave, the assignment thus originates in Hudson, and Cooper acts as a "mere conduit" in transmitting the information to Landgrave. (Pl.'s Resp., Dkt. 18, at 13). Cooper does not create or in any way generate the assignment itself. (Cooper Dep., Dkt. 16-2, at 25). Unlike in other cases, where a corporate headquarters was only involved in matters such as "accounting and administration," here it is clear that Hudson was involved, at least to some degree, in Landgrave's "actual work" assignments. *Bader v. N. Line Layers, Inc.*, 503 F.3d 813, 821 (9th Cir. 2007).

The Court finds that the material facts on this issue remain in dispute. While Cooper appears to have more of a role than a "mere conduit" for the ForSite application, his duties that ForTec lists appear largely ancillary to actual *assignment* activity. (*See* Def.'s Reply, Dkt. 21, at 4–5). At this stage, it appears that each party has presented facts that could reasonably persuade a trier of fact. As Landgrave acknowledges, "this type of conflicting evidence does nothing more than created a triable

issue of fact for the jury." (Pl.'s Resp., Dkt. 18, at 12 (citing cases)). As such, there is a genuine issue of fact as to Landgrave's assigning site, and summary judgment must be denied.

Although the fact issue on Landgrave's assignment site alone is sufficient to deny summary judgment, the Court will briefly address the final basis for eligibility. ForTec's argument for Landgrave's FMLA ineligibility based on the reporting site fares similarly. The location to which an employee reports is determined based on the "location of the personnel who were primarily responsible for reviewing . . . reports and other information sent by the [employee], in order to record [tasks], assess employee performance, develop new sales strategies, and the like." *Ciarlante*, 143 F.3d at 148. The parties agree that Cooper did not review reports from Landgrave, nor did she send any reports to him at all. (Def.'s Mot., Dkt. 16, at 10). Landgrave notes that she "sent reports only to Hudson; she sent nothing to [Cooper]." (Pl.'s Resp., Dkt. 18, at 13). Further, after completing an assignment, "she prepared reports—entering case details, items used, and notes regarding the final disposition—and sent the reports to Hudson. . . . Logistics, including Cooper, is not involved in receiving or reviewing Landgrave's reports. . . . But *Hudson does* review the reports." (*Id.*; Workflow Chart, Dkt. 18-8, at 1; Revenue Recognition Examples, Dkt. 18-9, at 2–3; Cooper Dep., Dkt. 16-2, at 31). According to Landgrave, Hudson employees reviewed her reports to determine whether she needed to make corrections, and instructed her if so. (Pl.'s Resp., Dkt. 18, at 14; Revenue Recognition Examples, Dkt. 18-9, at 2–3).

ForTec notes that Cooper was empowered to discipline Landgrave, as he did in writing for other technicians in his region, and verbally for Landgrave on several occasions. (Def.'s Mot., Dkt. 16, at 11; Cooper Dep., Dkt. 16-2, at 14–16; Cooper Decl., Dkt. 16-5, at 1). But Landgrave counters that he "never gave Landgrave any sort of employment assessment or evaluation during her employment" and "it is highly doubtful he had any authority to discipline her or affect her employment status . . . ." (Pl.'s Resp., Dkt. 18, at 14; Landgrave Dep., Dkt. 16-1, at 59; Cooper Dep.,

14

Dkt. 16-2, at 64–65; Def.'s Interrog. Answers, Dkt. 15-1, at 5; Pearson Dep., Dkt. 15-4, at 94–94). Given the competing interpretations of the reporting structure and Cooper's authority, the Court finds that a genuine dispute of material fact exists as to Landgrave's reporting site. As a result, the location of Landgrave's worksite, and her consequent eligibility under the FMLA, are properly left for a jury to resolve at trial. As such, summary judgment must be denied.[2]

### B. Landgrave's Motion

Landgrave seeks partial summary judgment only as to ForTec's good faith affirmative defense. Under the FMLA, a court may, in its discretion, reduce the amount of liquidated damages if an employer in violation of the Act "proves to the satisfaction of the court that the act or omission which violated [the FMLA] was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation . . . ." 29 U.S.C. § 2617(a). ForTec alleges that "any and all acts, conduct, and/or omissions of Defendant with regard to conduct toward Plaintiff were in good faith and without oppression or malice toward Plaintiff and her rights, thereby precluding claims for liquidated damages." (Answer, Dkt. 2, at 4).

Because the FMLA does not define "good faith," courts presented with this question look to the Fair Labor Standards Act ("FLSA") for its interpretation of the term. *See Nero v. Indus. Molding Corp.*, 167 F.3d 921, 928 (5th Cir. 1999) (citing *Frizzell v. Sw. Motor Freight*, 154 F.3d 641, 644 (6th Cir. 1998) ("Congress intended the remedial provisions of the FMLA to mirror those in the FLSA")); *see Hardtke v. The Hartford*, No. CIVASA04CA1006OGNN, 2006 WL 503952, at *2 (W.D. Tex. Jan. 5, 2006). As the Fifth Circuit has stated in the FLSA context, "good faith requires some duty to investigate potential liability;" and an employer cannot "rely on ignorance alone as [r]easonable

---

[2] Having found that genuine disputes of material fact exist with regard to Landgrave's eligibility under the FMLA, the Court finds it unnecessary to reach the issue of whether Cooper's residence constitutes a worksite under the Act. (See Def.'s Mot., Dkt. 16, at 12; Pl.'s Resp., Dkt. 18, at 15–16).

grounds for believing that its actions were not in violation of the Act." *Barcellona v. Tiffany Eng. Pub, Inc.*, 597 F.2d 464, 468–69 (5th Cir. 1979). Indeed, "[a]pathetic ignorance is never the basis of a reasonable belief." *Id.* at 469. The good faith defense is an exceptional one, and the defendant faces a "substantial burden" to prove it is properly invoked. *Id.* at 468; *see Steele v. Leasing Enterprises, Ltd.*, 826 F.3d 237, 246 (5th Cir. 2016) (same).

Landgrave asserts that "[n]o evidence exists that For[T]ec acted in good faith." (Pl.'s Mot., Dkt. 15, at 5). Its human resources personnel failed to review the FMLA or its implementing regulations or to seek legal advice, and they "were oblivious that FMLA regulations address the eligibility of workers with no fixed worksite." (*Id.*). ForTec's sole action was to consult its own allegedly deficient policy—which fails to address eligibility for workers with no fixed worksite. (*Id.* at 5–6). ForTec counters that its human resources manager, Nancy Pearson ("Pearson") has two human resources certifications and has earned certain unspecified continuing education credits; its human resources director, Laure Jones ("Jones") "knows the FMLA's prohibition against interference and retaliation, and that that prohibition is incorporated into ForTec's policies[;]" and it "operates in good faith, in part, by employing knowledgeable, experienced human resource professionals to oversee implementation of their employment policies." (Def.'s Resp., Dkt. 19, at 2–3; *see* Jones Dep., Dkt. 15-3, at 41–42). It further claims that "[t]here is no evidence showing reliance upon ignorance. To the contrary, ForTec relied upon its professionals with expertise in this area." (Def.'s Resp., Dkt. 19, at 3). But a human resources officer must do more than simply revisit an arguably deficient policy without reviewing the relevant law to have acted in good faith. (*See* Pl.'s Reply, Dkt. 20, at 8; Pearson Dep., Dkt. 15-2, at 11).

In contrast to the few facts ForTec cites to support its argument for denying summary judgment, Landgrave marshals significant support, largely from Pearson's deposition testimony, for her motion. (Pl.'s Reply, Dkt. 20, at 2–6). She notes that Pearson admitted to having no knowledge

16

of the FMLA's treatment of remote workers or their eligibility. (Pearson Dep., Dkt. 15-4, at 37). Pearson also stated that the only investigation she undertook was generally "for employees, not for remote employees." (*Id.*). She admitted that she did not seek legal counsel on the question of Landgrave's FMLA eligibility. (*Id.* at 38–39). And she testified that the full extent of her investigation was that she "researched our handbook." (*Id.* at 38). More specifically, she "reviewed the three requirements to be eligible and determined that the third reason, being the number of employees in the work or reported-to location, she does not qualify." (*Id.* at 80). Pearson knew of no other actions by ForTec to determine Landgrave's eligibility. (*Id.* at 80–81). She had no recollection of seeking out, reviewing, or discussing the DOL regulation—29 C.F.R. § 825.111—explicitly titled "Determining whether 50 Employees are Employed Within 75 Miles," which contains instructions on eligibility for remote workers. (*Id.* at 82). She engaged in "no analysis or discussion" of whether Landgrave was a remote worker, and was aware of no such discussion among others. (*Id.* at 82–83).

Landgrave is correct that ForTec's position is internally inconsistent—either (1) Pearson and Jones were ignorant of the FMLA and so failed to act in good faith when they declined to investigate the law as to remote workers, or (2) Pearson and Jones were knowledgeable of the FMLA and failed to act in good faith when they declined to engage with the Act's treatment of remote workers. (*See* Pl.'s Reply, Dkt. 20, at 7). Pearson's assertion that she consulted the handbook that she likely authored is little help, as the handbook says nothing with regard to remote workers and the FMLA. As such, the policy fails to address Landgrave's rights under the FMLA, and cannot relieve ForTec of its duty to investigate her rights. (FMLA Policy, Dkt. 15-6 at 1–2).

Given the parties' respective briefing, and in particular the paucity of facts or objections raised by ForTec, the Court finds that there is no genuine dispute of material facts on this issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-587 (1986). The Court further finds that ForTec cannot meet its burden, based on these facts, to establish entitlement to the good faith

affirmative defense. Therefore, Landgrave is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). ForTec's good faith affirmative defense is denied.

## IV. CONCLUSION

For the reasons stated above, **IT IS ORDERED** that Plaintiff Landgrave's Motion for Partial Summary Judgment, (Dkt. 15), is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant ForTec's Motion to Dismiss for Lack of Subject Matter Jurisdiction or, Alternatively, Motion for Summary Judgment, (Dkt. 16), is **DENIED**.

**SIGNED** on January 25, 2022.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE